Nathan Magida, Respondent, *v.* United States Fidelity & Guaranty Company and Others, Appellants, Impleaded with Concourse Enterprises, Inc., and Others, Defendants.

United States Fidelity & Guaranty Company, Plaintiff, *v.* Concourse Enterprises, Inc., and Others, Defendants.

(Consolidated Actions.)

First Department, June 18, 1941.

*John E. F. Wood* of counsel [*Herbert N. Monkemeyer* with him on the brief; *Root, Clark, Buckner & Ballantine,* attorneys], for the appellants.

*Alvin C. Cass* [*Morton S. Coan* with him on the brief], for the respondent.

CALLAHAN, J. This litigation arose out of difficulties which occurred in connection with the construction of a large apartment house at 940 Grand Concourse, New York, N. Y. In 1927 a building was being erected at said site by a corporation known as Concourse Enterprises, Inc., which had leased the land from the owner of the fee. Defendant United States Fidelity & Guaranty Company had given a completion bond in the sum of $500,000 for the protection of the lessor. The lessee failed to complete the building and on July 25, 1927, a committee of contractors, who were mechanics' lienors, took over the project under a written agreement with one Minskoff, the owner of the capital stock of the lessee. Among other provisions, said agreement gave the contractor's committee control of the lessee's stock, as well as that of other building companies owned by the same interests. These transfers were made to secure the contractors for any expenditures they might make in completing 940 Grand Concourse. Plaintiff was a general creditor of the lessee on a note for $10,000 and had started suit on his claim. Any judgment he might have obtained in that action would have been subordinate to mortgagee's liens, and to the liens of contractors. The agreement of July 25, 1927, recited the existence of the obligation of the lessee to the plaintiff. The contractors' committee accepted the transfer of the lessee's property to complete the building, with authority to effect a mortgage or otherwise handle the property in order to pay carrying charges, and to raise funds to pay for work and materials, and to repay

the committee. It provided that any balance received would be used to pay creditors without priority among contractors' creditors. It contained certain restrictions on the right to sell the finished building, which are not material here. The only right afforded plaintiff under this agreement is that it recognized his claim as a general creditor and his right to share in a surplus after mortgagees' and mechanics' liens were paid.

Two additional agreements were prepared under date of September 1, 1927; one between plaintiff and the contractors' committee, which was executed September 14, 1927, and the second between the contractors' committee and the Fidelity Company, which was finally executed on September 26, 1927.

It appears that all parties to each of these agreements, including plaintiff and the Fidelity Company, knew of the proposed provisions of the other agreement, though plaintiff was not made a party to the agreement with the Fidelity Company, and the latter was not made a party to the agreement signed by plaintiff. Under the agreement of September 14, 1927, plaintiff was to withdraw his suit against Concourse Enterprises, Inc., and to take no further action to enforce a lien on the property, in consideration of the contractors' committee's agreement to pay plaintiff's note out of the rent proceeds of the leasehold after the payment of cost of completion and the contractors' claims.

Prior to that time a mortgage of $250,000 had been given to the contractors' committee to take the place of the contractors' liens. Therefore, the mortgages prior to plaintiff's claim consisted of a first mortgage of $600,000; a second blanket mortgage of $100,000 also covering another parcel, and the third mortgage of $250,000 given to the contractors' committee in lieu of their mechanics' liens.

The agreement of September twenty-sixth provided a plan whereby the Fidelity Company was to finance the completion of the building.

The Fidelity Company, as a condition precedent to signing the agreement of September 26, 1927, required the contractors' committee to procure plaintiff's signature to the agreement of September 14, 1927. The agreement of September twenty-sixth contained covenants whereby the Fidelity Company was to pay to the contractors' committee $371,000 to cover the cost of completing the building. The committee agreed to do the necessary work of completion. The committee assigned the leasehold and the $250,000 mortgage to the Fidelity Company as security for the repayment of the $371,000. The committee also agreed to procure a subordination of the $100,000 blanket second mortgage to their $250,000 mortgage. The building was to be finished by December 31, 1927,

and the property freed and kept free from liens. The Fidelity Company was to take over the property and manage it, pay carrying charges, first pay itself the advances towards the cost of completion, and thereafter pay the contractors' claims. It was provided by this agreement that the leasehold was not to be sold or incumbered until 1930, and the contractors were to be given notice of any such proposed sale or incumbrance, with the right to pay Fidelity Company for its advances and to take back the property.

The preliminary steps having been completed, pursuant to the provisions of this contract of September 26, 1927, Fidelity Company took over and managed the property, and continued to do so, either directly or through defendant Nybo Realty Co., Inc., its nominee, until after the commencement of the present action in 1932.

During all this time the property failed to produce sufficient net income to pay Fidelity Company's advances. In 1932 Fidelity Company bought the $100,000 second mortgage (which had been reduced to $85,000) for the sum of $1,500. Thereafter, and in 1932, Fidelity Company brought an action to foreclose the $250,000 mortgage, and plaintiff brought an action in equity to enforce rights which he asserted as beneficiary of an alleged trust in his favor. In his complaint plaintiff also asserted fraud between the contractors' committee and Fidelity Company. These actions were consolidated and resulted in the interlocutory judgment appealed from. This interlocutory judgment directed an accounting which was had before a referee, who reported in favor of awarding plaintiff personal judgment against Fidelity Company, although the referee found that there never had been sufficient net income to pay Fidelity Company's claims. The basis of the referee's findings will be discussed later. The referee's report was confirmed, and a final judgment entered, from which the present appeal has also been taken.

The decision of the Special Term on which the interlocutory judgment was based, found against the plaintiff on his claims of fraud. In fact the court found that all defendants believed in good faith that the agreements of September, 1927, would be carried out. It found that the plaintiff knew prior to his execution of his agreement of September 14, 1927, with the contractors' committee that the agreement later signed on September 26, 1927, had been drawn up, and that the committee was to assign to Fidelity Company the leasehold and the $250,000 mortgage, as security for the repayment of the $371,000 to be advanced by Fidelity Company to complete the building. The interlocutory

decree expressly found that plaintiff was present at a meeting when the terms of the September 26, 1927, agreement were discussed, and that that agreement was made without any concealment. It found that the assignment of the leasehold and the $250,000 mortgage was in the interest of all parties concerned and was made to induce Fidelity Company to advance the money to finish the building. Nevertheless, Special Term concluded as a matter of law that Fidelity Company, having taken the property with knowledge of the contractors' agreement to pay plaintiff's claim, held the property in trust to carry out contractors' agreement with plaintiff and to pay plaintiff's claim out of the net proceeds of the leasehold. It further concluded that when Fidelity Company took possession of the property, it rendered the contractors' committee unable to pay plaintiff's claim, because the contractors' committee no longer was in a position to raise a mortgage or sell the property so as to pay off creditors' claims. The court concluded as a matter of law that Fidelity Company was under the duty of using reasonable effort to refinance the property by obtaining a new mortgage large enough to accomplish payment of plaintiff's claim, or to sell the property so that plaintiff could receive payment. Not having refinanced or resold the property prior to 1932, when the real estate depression rendered such steps impossible, the court held that plaintiff was entitled to judgment directing Fidelity Company to account for its handling of the property, and to pay plaintiff out of the net proceeds, after deducting operating indebtedness and expenses. The judgment then provided that, if after the accounting there was found to be a balance due the Fidelity Company, it might have a judgment of foreclosure. Other relief was granted plaintiff against other defendants, which has no bearing on the issue presented on this appeal.

After entry of the interlocutory judgment a lengthy reference was had in which voluminous testimony was taken concerning the receipts and disbursements of Fidelity Company in managing the property. The referee also took proof concerning the conduct of the Fidelity Company in dealing with the property as trustee in connection with its adjudged duty to refinance or sell the property.

Several years later the referee made a lengthy report. Although he also found that there never had been sufficient surplus of income over carrying charges to pay Fidelity Company for its advances in completing the building, he, nevertheless, reported that Fidelity Company had been guilty of a breach of trust because it had not sold the property or obtained a large enough mortgage to pay all claimants, though it might have done so in the years it had control up to 1931. This report was confirmed by Special Term.

Prior to the entry of final judgment it had become so unprofitable, because of continuous operating deficits, for Fidelity Company to continue to hold the building, that permission was given by the court to cancel the leasehold, and return the property to the lessor. Nevertheless, plaintiff has been awarded a money judgment for the full amount of his claim. The net result, therefore, of this unduly lengthy and expensive litigation has been that an unsecured creditor, who started off with a claim prior to those of contractors and the claim of Fidelity Company to the extent of the cost of completion, has received payment in full, although those having prior claims have not been paid. We find that this result is due to erroneous conclusions in the interlocutory judgment, in the report of the referee, and in the final judgment entered thereon concerning the duty of Fidelity Company to plaintiff and its alleged breach of duty.

The first and fundamental error was that contained in the interlocutory decision wherein it was held that the transfer of the leasehold by the contractors' committee to the Fidelity Company was a violation of the duty of the committee to hold the property in trust for the plaintiff. This holding overlooked the fact that the transfer was merely as security, and made with plaintiff's knowledge, to assure the completion of the building. Another error was the finding that the raising of a new mortgage or the sale of the property was a duty cast on the Fidelity Company. Assuming, however, that by reason of any duty implied under the contracts the contractors' committee or Fidelity Company was obligated as trustee to endeavor to refinance or to sell, so that plaintiff could receive payment, the finding of a breach of such duty was erroneous. The theory upon which Special Term held Fidelity Company liable was that the transfer of control of the property by the contractors' committee to Fidelity Company had dulled the latter's sense of duty to use diligence in plaintiff's interest. The very facts found by Special Term made the foregoing conclusions erroneous. The necessity of completing the building was found as a fact, and was self-evident, for an unfinished building was unmarketable. Fidelity Company was supplying additional money to complete the unfinished structure. Instead of doing this it might have settled its obligation as surety without risking further advances. Completion appeared to be the only hope of salvage for all concerned, including plaintiff. Whatever may have been the obligation of the contractors to Minskoff under their contract of July 25, 1927, they were not obligated to plaintiff to advance the cost of completion. Surely Fidelity Company had no such obligation to the plaintiff. It was essential to procure the money

necessary for completion. A lender would want security for any advance. The transfer of the leasehold and mortgages was a necessary step taken with plaintiff's knowledge, if not his actual consent. Fidelity Company was getting only security such as was reasonable and conscionable. There was nothing in the transfer of the leasehold and mortgages as collateral which prevented refinancing or sale if the interested parties agreed to these steps, and could find a lender or a buyer. Clearly there was no "repudiation of a trust" created in favor of plaintiff under the agreement of September 14, 1927, by the execution of the contract of September 26, 1927, as contended for by plaintiff. Indeed, there was no trust obligation, except that Fidelity Company, as a lienor in possession, was a fiduciary to the extent of requiring it to account for its management of the property, and for the application of the income therefrom to carrying charges, so that its own and the other claims which attached to the fund might be paid.

The Special Term correctly found that there had been no fraud in connection with the agreement of September 26, 1927, and that no surplus ever came into existence with which plaintiff's claim might be paid. The court should also have found that Fidelity Company violated no duty it owed to plaintiff. In fact the contract of September 26, 1927, was a lawful arrangement to secure Fidelity Company for the advancement of new money, which advancement was expected to aid rather than injure the plaintiff.

With respect to the failure to mortgage or sell, the court erroneously found such duties present, and erroneously found a violation of those duties. The existence of these duties appears to be an afterthought of plaintiff. He did not plead them in his complaint. There he relied on the claim of fraud. Having lost on that claim he asserted this tenuous claim of a duty to mortgage or sell. The agreement of September 26, 1927, stated that no sale was to be made before September, 1930. This meant that no sale was to be made except on consent of contractors and Fidelity Company.

The right to sell was maintained and if we assume that a duty to sell existed, we find no proof whatever to justify the conclusion that there was a violation of such duty.

The mortgages on the property totaled $920,000. The only expert testimony in the case shows that total could never have been realized on a sale. The very fact that in 1932 one of the mortgages making up the $920,000 was sold for $1,500, although $85,000 was due thereon, showed the lack of any substantial equity in the property above the mortgages. The referee found that this mortgage which was bought for $1,500 in 1932, could have been bought equally cheap back in 1928. This shows that the lack of

equity had persisted from the earlier date. We find no proof whatever to support the referee's conclusion that a sale at $920,000 or higher was ever feasible during the period Fidelity Company held the security.

In the accounting there were some derelictions shown on the part of a rental agent selected by Fidelity Company. Even though Fidelity Company be charged with every cent of these derelictions, it still had a large balance due it from the money it had advanced for completion.

The record in this case is one showing loss by all concerned in a building venture which ran into a market which prevented any chance for success. No violation of duty by Fidelity Company caused plaintiff to suffer his loss, and there is no legal justification in this record for the award of personal judgment to plaintiff against defendant Fidelity Company.

The judgments and the order should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., UNTERMYER, DORE and COHN, JJ., concur.

Judgments and order unanimously reversed, with costs, and the complaint dismissed, with costs.

Settle order on notice, reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.